The O ZON INC., a Delaware corporation and Visual Graphic Systems, Inc., a New York corporation, Plaintiffs,

v.

Bart CHARLES, Defendant.

No. 02 Civ. 9527(RLE).

United States District Court, S.D. New York.

July 14, 2003.

Mary E. Flynn, Morrison, Cohen, Singer & Weinstein, LLP, New York City, for Plaintiffs.

Michael J. Lane, Anderson, Kill & Olick, PC, Daniel J. Healy, Anderson, Kill Et Ano, New York City, for Defendant.

## OPINION AND ORDER

ELLIS, United States Magistrate Judge.

## I. INTRODUCTION

Before this Court is a motion by defendant Bart Charles ("Charles") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Amended Complaint of plaintiffs The O Zon Inc. ("TOZI") and Visual Graphic Systems, Inc ("VGS") (collectively "plaintiffs"). For the following reasons, Charles's motion to dismiss is **GRANTED** and plaintiffs' complaint is **DISMISSED WITHOUT PREJUDICE.**

## II. BACKGROUND

Plaintiffs are a corporate entity with offices in New York and Delaware. *See* Amended Complaint ("Amend.Compl.") at ¶¶ 10, 11. Sometime before March 2002, plaintiffs developed a concept for a new restaurant and kiosk/cart chain named KidKafe, which was oriented toward a chil-dren and teen market. *Id.* at ¶¶ 13, 14. In March 2002, plaintiffs changed the name of the concept to TOZI. *Id.* at ¶ 14. Plaintiffs describe the restaurant concept as a "distinctive interior and graphic design[ ] [with] specialized sandwich recipes, desserts, beverages and equity characters." *Id.* at ¶ 13. TOZI will offer special sandwiches composed of toasted bread with their crusts cut off, and beverages which combine two different types of drinks through a double helix straw. *Id.* at ¶¶ 15, 16.

For several years prior to 2001, Charles had been attempting to sell a round sandwich machine manufactured by Wisco Industries, Inc. ("Wisco"). *Id.* at ¶ 17. In or around September or October 2001, VGS's CEO Patrick Benasillo ("Benasillo"), who later became CEO of TOZI, met with Charles in New York to discuss the idea of Charles acting on plaintiffs' behalf in launching the TOZI project. *Id.* The parties entered into a confidentiality agreement ("the agreement") on or about October 17, 2001. *Id.* at ¶ 18. The agreement pledged Charles to "protect" plaintiffs' trade secrets, including "information or material which is proprietary to, whether or not owned or developed by [plaintiffs], which is not generally known other than by, and which Charles may obtain through any direct or indirect contact with [plaintiffs]" *Id.* at ¶ 19. After the agreement was signed, plaintiffs authorized Charles to contact potential investors, licensees and vendors to promote and develop the restaurant concept. *Id.* at ¶ 23. Charles accordingly had full access to plaintiffs' business and design plans, including drawings and computer graphic programs which laid out in detail the concepts and designs contemplated for the restaurant. *Id.* at ¶ 24.

Throughout the fall and winter of 2001–2002, Benasillo and Charles discussed, but failed to reach any agreement, as to

Charles's affiliation with the plaintiffs. *Id.* at ¶¶ 27–32. During that time, Charles continued to work for plaintiffs, and introduced plaintiffs' representative to Wisco, for the purpose of plaintiffs exploring the incorporation of the round sandwich into TOZI. *Id.* at ¶ 28. In or around March 2002, plaintiffs decided to secure a patent of the Wafflo ice cream sandwich, an ice-cream sandwich with an ice-cream "puck" in between two Eggo waffles. *Id.* at ¶¶ 16, 33–35. Plaintiffs concede this was Charles's creation, and submitted their patent application in Charles's name. *Id.* at ¶ 33. By April 2002, the parties were still in negotiations relating to Charles's affiliation with plaintiffs. *Id.* at ¶ 36. Further, Benasillo arranged for TOZI to enter into commitments in anticipation of the launch of the restaurants, including an attempt to become the exclusive distributor of Wisco's products. *Id.* at ¶ 37.

On or about May 16, 2002, TOZI entered into a written agreement with Wisco that provided TOZI with exclusive distribution rights for a machine known as the Pocket Grill. *Id.* at ¶ 40. Negotiations between Charles and Benasillo continued through the summer of 2002. *Id.* at ¶¶ 38–44, 47–50. During that summer, Charles met with a number of vendors and distributors on behalf of TOZI. *Id.* at ¶¶ 42, 44. TOZI paid for Charles's airfare, hotel and meal expenses for those meetings. *Id.* at ¶ 42. The relationship between the parties began to deteriorate in August 2002, when Charles contended that "he alone (without Plaintiffs) helped develop the Pocket Grill and was the exclusive distributor of the Pocket Grill and that he alone created Plaintiffs' unique, and trademarked, food designs." *Id.* at ¶ 43. On or about September 8, 2002, Benasillo learned that Charles had been ordering machines from Wisco without TOZI's consent and knowledge. *Id.* at ¶ 45. Charles arranged for Wisco to bill TOZI directly for the Pocket Grills, and then sold them to third parties

at a profit, which he kept for himself. *Id.* Charles also told Benasillo that his meetings with vendors and distributors throughout the summer had been for his own benefit. *Id.* at ¶ 46. Negotiations between the parties ended shortly afterwards. *Id.* at ¶ 50.

## III. DISCUSSION

### A. Standard of Review for 12(b)(1) and 12(b)(6) Motion

In considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must assume as true factual allegations in the complaint. *See Shipping Financial Services Corporation v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). In doing so, the court may consider extra-pleading material, given that the validity of a 12(b)(1) motion "rarely is apparent on the face of the pleading and motions raising [it]." Wright & Miller, 5A Fed. Prac. & Proc. Civ.2d § 1364; *see also, Filetech S.A. v. France Telecom S.A.,* 157 F.3d 922, 932 (2d Cir.1998) (quoting *Antares Aircraft v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992)).

A Rule 12(b)(1) motion is appropriate when a plaintiff's federal claim is not even minimally plausible. *See Town of West Hartford v. Operation Rescue,* 915 F.2d 92–99 (2d Cir.1990); *see also AVC Nederland B.V. v. Atrium Inv. Partnership,* 740 F.2d 148, 152–53 (2d Cir.1984) ("[W]hen the contested basis of federal jurisdiction is also an element of plaintiff's asserted federal claim, the claim should not be dismissed for want of jurisdiction except when it appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is

wholly insubstantial and frivolous.") (internal quotation marks omitted).

■ In most cases, the court will consider a 12(b)(1) motion before ruling on any other motions to dismiss, since dismissal of an action for lack of subject matter jurisdiction will render all other accompanying defenses and motions moot. *See United States ex rel Kreindler & Kreindler v. United Technologies Corp.,* 985 F.2d 1148, 1155–56 (2d Cir.1993), *cert. denied sub nom. Kreindler & Kreindler v. United Technologies Corp.,* 508 U.S. 973, 113 S.Ct. 2962, 125 L.Ed.2d 663 (1993); *see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir.1990). Thus, a court confronted with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) should decide the jurisdictional question first because "a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Magee v. Nassau County Medical Center,* 27 F.Supp.2d, 154, 158 (E.D.N.Y.1998); *see also, Rhulen,* 896 F.2d at 678.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only if it appears beyond doubt that " 'no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Hishon,* 467 U.S. at 73, 104 S.Ct. 2229. The Court does not, however, have to accept as true "conclusions of law or unwarranted deductions of fact." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994), *cert. denied,* 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995) (*citing* 2A Moore & Lucas, Moore's Federal Practice ¶ 12.08, at 2266–69 (2d ed.1984)). The review is limited, and "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]" *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995), *cert. denied,* 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996).

## B. Declaratory Judgment and 12(b)(1) Motion

The Declaratory Judgment Act, 28 U.S.C. § 2201(a) provides:

In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

■ Further, "in order for a federal court to have jurisdiction over an 'actual controversy,' a federal question 'arising under the Constitution, laws or treaties of the United States' must be involved ... since it is well-settled that the Declaratory Judgment Act does not expand the jurisdiction of the federal courts." *Starter Corporation v. Converse, Inc.,* 84 F.3d 592, 594 (2d Cir.1996). If no controversy exists, the courts are prohibited from rendering an advisory opinion. The Second Circuit has held, "[i]n a declaratory judgment action involving trademarks, the test for an 'actual case or controversy' has two prongs, both of which must be satisfied in order to establish declaratory judgment jurisdiction: (1) has the defendant's conduct created a real and reasonable appre-

hension of liability on the part of the plaintiff, and (2) has the plaintiff engaged in a corse of conduct which has brought it into adversarial conflict with the defendant." *Id.* at 595. The Court went on to note "an actual case or controversy exists where a party has engaged in a course of conduct evidencing a definite intent and apparent ability to commence use of the marks on the product." *Id.* (citations omitted).

■ Plaintiffs claims fail the first prong of the *Starter Corp.* test. In a typical declaratory judgment action in a trademark case, the plaintiff is "seeking a declaration that it is free to use a mark without incurring liability for infringement." *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F.Supp.2d 234, 244 (S.D.N.Y. 2000) (citations omitted). Nothing in the facts alleged has demonstrated an intent on Charles's part to file an action seeking to use any alleged trade dress of the plaintiffs. Indeed, Charles indicates in his own declaration that he has no intention of ever using plaintiffs' alleged trade dress. *See* Declaration of Bart J. Charles in Further Support of Defendant's Motion to Dismiss the Amended Complaint ("Charles Decl.") at ¶ 25.

Plaintiffs have also failed to sufficiently plead "a definite intent and apparent ability to commence use of" their trade dress by Charles. Plaintiffs specifically pled that Charles "intends to" infringe upon the TOZI concept, but have not pled any facts which support this claim. While plaintiffs have alleged that Charles contacted vendors and distributors, Charles has been in the food services industry for over twenty-five years. *See* Charles Decl. at ¶ 5. Further, Charles currently has five retail facilities and an extensive catering services contract at the University of California Irvine. *Id.* at ¶ 6. Charles admits that he continued promoting his own business while negotiating with plaintiffs, a business which has been in existence since 1994.

*Id.* at ¶ 20. Therefore, there are no allegations to support a claim that Charles did anything other than conduct his ordinary course of business.

Finally, plaintiffs have not alleged any financial steps which Charles has taken to infringe on their trade dress. In *Dr. Reddy's Laboratories, Ltd.*, 2002 WL 31059289 at *9 (S.D.N.Y.2002), the court found that the infringer had taken substantial monetary steps, such as spending "several million dollars to develop its product … and construction of a plant to manufacture its [ ] product." In the case before this Court, plaintiffs have failed to allege any substantial steps Charles has taken to infringe on their trade dress (such as development concepts of similar restaurants and/or kiosk carts). Therefore, pursuant to Rule 12(b)(1), plaintiffs' declaratory judgment claim is **DISMISSED WITHOUT PREJUDICE.**

### C. Injunctive Relief

■ Although the Court has already decided that there is no "case or controversy" to be decided by this complaint, the Court considers plaintiffs' remaining claims. Plaintiffs' second cause of action is for "injunctive relief." However, "[t]here is no 'injunctive' cause of action under New York law or federal law. Instead, [plaintiffs] must allege some wrongful conduct on the part of [the defendant] for which their requested injunction is an appropriate remedy." *Reuben H. Donnelley Corporation v. Mark I Marketing Corporation*, 893 F.Supp. 285, 293 (S.D.N.Y.1995). Therefore, to decide Charles's motion to dismiss this cause of action, the Court must first examine plaintiffs' remaining two claims.

### 1. Lanham Act Claim

■ Plaintiffs allege a trade dress infringement claim under Section 43(a) of

the Lanham Act, 15 U.S.C. § 1125(a)(1). "In order to state a claim under § 43(a), a plaintiff must allege: (1) that its trade dress is inherently distinctive or has become distinctive because it has acquired secondary meaning; and (2) that there exists a likelihood of confusion between its product and the alleged infringer's product." *Ivy Mar Company, Inc. v. C.R. Seasons Ltd.*, 1997 WL 37082 *9 (E.D.N.Y. 1997) (*citing L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co.*, 79 F.3d 258, 262 (2d Cir.1996)). "The 'trade dress' of a product consists of its total image, composed of features such as size, shape, color or color combinations, texture or graphics." *Hubbell Incorporated v. Pass & Seymour, Inc.*, 883 F.Supp. 955, 958 (S.D.N.Y. 1995) (citations omitted). Further, trade dress protection may not be claimed for product features that are functional, and the plaintiff has the burden of proving that the matter sought to be protected is not functional. *See TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001). The Supreme Court has cautioned "against misuse or overextension of trade dress" protection. *Id.* Although plaintiffs repeatedly cite cases dealing with theft of trade secrets in their memorandum of law, it is important to note that plaintiffs' claims for trade dress infringement are drastically different from claims of theft of trade secrets, a claim plaintiffs have not alleged in their complaint.

The Court begins by noting that it is questionable whether plaintiffs have pleaded sufficient facts to allege that it has an actual trade dress capable of being infringed. *See, e.g., Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (noting that a detailed description of the restaurant, including characteristics that made the res-

taurant unique, qualified as trade dress). While the plaintiffs repeatedly note TOZI's "distinctive interior and graphics designs," they never allege what makes its restaurant so distinctive. However, the Court need not decide this issue as plaintiffs have failed to allege a likelihood of confusion.[1]

■■■ "[I]n order to prevail on a[ ] [trade dress] infringement claim, a plaintiff must also prove that the allegedly infringing product is likely to confuse consumers as to its source or sponsorship." *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, 118–19 (2d Cir. 2001). In *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.1961), the Second Circuit set out a series of factors to consider the likelihood of confusion question. Among those factors are:

> the strength of [the prior owner's] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap [between the two products], actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.

*Polaroid Corp.*, 287 F.2d at 495. "The *Polaroid* analysis is not a mechanical measurement." *Nora Beverages*, 269 F.3d at 119. Further, "[w]hen conducting a *Polaroid* analysis, 'a court should focus on the ultimate question of whether consumers are likely to be confused.'" *Id.* (*citing Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 584 (2d Cir.1993)). The court must look at the totality of the product, and while no one factor is necessarily dispositive, any one factor may prove to be so. *Id.* In the case before this Court, it is impossible to use

---

1. The Court also does not reach the issue of inherent distinctiveness or secondary mean-

ing as plaintiffs complaint does not allege a likelihood of confusion.

the *Polaroid* factors to analyze a likelihood of confusion, as plaintiffs have not alleged that Charles has any trade dress likely to be confused with plaintiffs' *future* trade dress. Therefore, because plaintiffs have failed to allege a cause of action under Section 43(a) of the Lanham Act, their Lanham Act claim must be **DISMISSED**.

### 2. Breach of Contract Claim

 "To state a breach of contract claim under New York law, a complaint must allege '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Log On America, Inc. v. Promethean Asset Management, L.L.C.*, 223 F.Supp.2d 435, 451 (S.D.N.Y.2001) (*quoting Harsco Corporation v. Segui*, 91 F.3d 337, 338 (2d Cir.1996)). Plaintiffs fail to satisfy the third prong of this test, namely, they have failed to sufficiently allege facts which support a breach on the part of Charles. Plaintiffs note that the confidentiality agreement imposed a duty on Charles to "protect" information, and "to hold in confidence and not disclose the Confidential Information to any person or entity." *See* Amend. Compl. at ¶¶ 19–20. However, plaintiffs allege that Charles contacted competitors "with a *goal* to *eventually* use Plaintiffs' concepts, business plans and designs for his own benefit" and further allege that Charles "would have made use of Plaintiffs' design concepts and distinctive food products." *Id.* at ¶¶ 25–26. These facts do not demonstrate that Charles "disclosed" any confidences or failed to "protect" any information at this point. Therefore, plaintiffs' breach of contract claim should be DISMISSED. Having dismissed every other cause of action, plaintiffs' second cause of action for "injunctive relief" must also be **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, Charles' motion to dismiss is **GRANTED**. Plaintiffs' complaint is hereby **DISMISSED WITHOUT PREJUDICE**.