Warren **KESSELMAN,**
et al., **Plaintiffs,**

v.

**THE RAWLINGS COMPANY,**
**LLC, et al., Defendants.**

**No. 08 Civ. 7417(BSJ).**

United States District Court,
S.D. New York.

Nov. 13, 2009.

Michael Max Goldberg, Law Off. of Michael Goldberg, Robert Hugh Goldberg, Goldberg & Carlton, New York, NY, for Plaintiffs.

Richard Wolfe Cohen, Peter Dexter St. Philip, Jr., Lowey Dannenberg Cohen & Hart, P.C., White Plains, NY, Neal S. Manne, Susman Godfrey L.L.P., Los Angeles, CA, Robert Rivera, Susman Godfrey LLP, Houston, TX, Tibor Ludovico Nagy, Jr., Susman Godfrey LLP, Bruce Harvey Schneider, Sandra June Rampersaud, Stroock & Stroock & Lavan LLP, Ronald E. Richman, Schulte Roth & Zabel LLP, Deidre Ann Grossman, Proskauer Rose LLP, Kevin Barry McHugh, Fiedelman & Garfinkel, Jason Paul Casero, McDermott, Will & Emery, LLP, New York, NY, Brian David Boyle, Theresa S. Gee, Robert Norris Eccles, O'Melveny & Myers LLP, Washington, DC, Cynthia Evans Neidl, Heather P. Behnke, Greenberg Traurig, LLP, Albany, NY, David Israel, Maria N. Rabieh, Sessions, Fishman, Nathan & Israel, L.L.P., Tampa, FL, for Defendants.

### Order

BARBARA S. JONES, District Judge.

In this action, Plaintiffs have brought a putative class action complaint against numerous Defendants[1] alleging violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). The lawsuit concerns a puta-

---

1. The Rawlings Company LLC ("Rawlings"), Healthcare Recoveries, Inc. ("HRI"), Ingenix, Inc. ("Ingenix"), Aetna Health Inc. ("Aetna"), d/b/a Aetna Health Insurance Company of New York, Health Net of New York, Inc. ("Health Net"), Health Insurance Plan of Greater New York ("HIP"), d/b/a HIP Insurance Company of New York, United Health- care of New York, Inc. ("United"), d/b/a United Healthcare Insurance Company of New York, Oxford Health Plans Inc. ("Oxford"), Group Health Incorporated ("GHI"), Coach, Inc. ("Coach"), NYSE Group, Inc. ("NYSE"), Alicare, Inc. ("Alicare"), and Corporate Does Nos. 1–1300.

tive class of plaintiffs who (1) "were involved in motor vehicle accidents in the State of New York," (2) "had a portion of their medical bills paid by their respective private health insurance companies," (3) subsequently "recovered a settlement or judgment" for "pain and suffering" from the other driver and/or that driver's insurance company, and (4) "were subjected to claims for reimbursement by the Defendants." (Am. Compl. ¶ 98.) Plaintiffs have named as Defendants the Plaintiffs' health insurance carriers that paid their medical bills, the subrogation agents collecting on behalf of these insurance carriers, and a few of the Plaintiffs' employers who acted as health plan administrators. This opinion addresses ten motions to dismiss by fourteen Defendants, many of whom raise the same arguments. Accordingly, to avoid an unduly duplicative and lengthy opinion, the movants' legal arguments will be grouped together by claim.

The Plaintiffs assert four "Counts" for relief. In Counts One, Two, and Three, Plaintiffs assert that Defendants' communications and assertions of reimbursement rights violated provisions of ERISA, specifically § 502(a)(1)(B) and § 502(c)(7). In Count Four, Plaintiffs assert these same acts by certain Defendants, the subrogation agents, violated the Fair Debt Collection Practices Act ("FDCPA"). Plaintiffs have voluntarily dismissed Count Three pertaining to violations of ERISA § 502(c)(7). For the reasons set forth below, Defendants' Motions to Dismiss all the remaining claims are GRANTED.

**2.** The following facts are taken from the allegations in Plaintiff's Amended Complaint and are assumed to be true for the purposes of this decision only.

**3.** Warren Kesselman ("Kesselman"), Lorien Aiello ("Aiello"), Zoe Chait ("Chait"), Adrienne Haskell ("Haskell"), Amelia Trinchese

## BACKGROUND[2]

The Plaintiffs plead many common factual allegations. Each of the eight Plaintiffs[3] alleges that he or she was a New York State resident at the time that he or she sustained personal injuries from unrelated automobile accidents, all occurring in New York. (Am. Compl. ¶ 48.) All the Plaintiffs allege that they had their resulting medical bills paid by one or more of the moving Defendants pursuant to the terms of a health benefit plan. (Am. Compl. ¶¶ 51, 55, 61, 67, 73, 79, 85, 90.) All of the Plaintiffs' plans, except Kesselman's and Prescott's, were ERISA plans. (Am. Compl. ¶ 25.)[4]

At the time of his or her accident, each Plaintiff was covered by a "No–Fault" insurance policy with a minimum coverage of $50,000 for economic losses. (Am. Compl. ¶ 49.) Each Plaintiff "had a personal injury claim presented" by Michael Goldberg ("Goldberg")—who is also their attorney in this action—against person(s) allegedly responsible for his or her injuries which resulted in a recovery for "non-economic" loss. (Am Compl. ¶ 50.) Each Plaintiff's plan contained a provision entitling the plan to reimbursement from the Plaintiff's third-party recovery. (Am. Compl. ¶ 52 (Kesselman), ¶ 56 (Aiello), ¶ 62 (Chait), ¶ 68 (Haskell), ¶ 74 (Trinchese), ¶ 80(Ram), ¶ 86 (Prescott) and ¶ 90 (Jean–Pierre).) Each Plaintiff alleges that one or more of the Defendants notified him or her, or Goldberg, of their rights to reimbursement from Plaintiff's third-party tort recovery. (Am. Compl. ¶¶ 53, 58, 64, 70, 76, 83, 88, 93; *See* Am. Compl. Exs. 1–8.) As a

("Trinchese"), Parbatie Ram ("Ram"), Yvonne Prescott ("Prescott"), and Carline Jean–Pierre ("Jean–Pierre").

**4.** Kessleman was covered by a Medicare plan, not an ERISA plan. (Am. Compl. ¶¶ 25, 52). Prescott's plan is a "governmental plan" that is not subject to ERISA.

result of these claims for reimbursement presented by Defendant Rawlings and Aetna, Plaintiff Jean–Pierre paid Rawlings $545 on January 13, 2004 out of her third-party settlement. (Am. Compl. ¶ 95.) The Amended Complaint does not allege that any other Plaintiff made a payment from his or her settlement to a health insurance carrier or subrogation agent.

## THE STANDARD AND THE SCOPE OF REVIEW

A complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if a Plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). The Court must read the complaint generously, accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations. *See York v. Ass'n of the Bar of the City of N.Y.,* 286 F.3d 122, 125 (2d Cir. 2002); *see also Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). Dismissal under Rule 12(b)(6) is required when a complaint fails to allege sufficient facts to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

In addition to the exhibits attached to the Amended Complaint, the parties have submitted numerous documents to the Court on this motion. It is well established that the Court can consider documents attached as exhibits to the complaint or incorporated by reference into the complaint, when ruling on a motion to dismiss. *Gryl ex rel. Shire Pharms.*

*Group PLC v. Shire Pharms. Group PLC,* 298 F.3d 136, 140 (2d Cir.2002). Pursuant to a Court order dated Nov. 4, 2009, Plaintiffs' counsel provided the Court with the Plaintiffs' exact third-party settlement dates to supplement the record. While Plaintiffs did not plead the specific settlement dates in the Amended Complaint, they referred to them and relied upon them throughout their complaint. With regard to Plaintiffs Prescott and Ram, Defendant HRI submitted Closing Statements filed by Plaintiffs' counsel, Goldberg, with the New York Office of Court Administration to demonstrate when they settled their claims with third-parties. (*See* Nagy Decls. Exs. 3.) The Court may also properly consider these documents of public record. *See Byrd v. City of New York,* 2005 WL 1349876 (2d Cir.2005) (slip)(affirming Rule 12(c) dismissal where district court relied on stipulation of settlement previously filed with the court and noting that "we have often held that material that is a matter of public record may be considered in a motion to dismiss"); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004).

## DISCUSSION

Defendants argue that Plaintiffs' three remaining claims must be dismissed because Plaintiffs fail to state a claim upon which relief can be granted. The Court agrees that all of Plaintiffs' claims must be DISMISSED.

### I. "Reimbursement" of Benefits (Count I)

■ The First Count is for "repayment" of benefits. (Am. Compl. ¶¶ 115–122). This claim is made pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which authorizes a participant in or beneficiary of an ERISA plan to sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms

of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" (Am. Compl. ¶ 116.) The Amended Complaint alleges that "the Defendants have breached the subrogation and/or reimbursement provisions of their respective insurance plans and have wrongfully presented a claim for reimbursement and/or been reimbursed by the Plaintiffs for their medical bills out of the Plaintiffs' personal injury settlements, which were limited to pain and suffering only." (Am. Compl. ¶ 117.) Consequently, Plaintiffs seek reimbursement plus interest of any amount paid out of their third-party personal injury settlement to their private health insurance carrier and/or their authorized subrogation agent. (Am. Compl. ¶ 119.)

In the Amended Complaint, this count appears to be brought on behalf of all Plaintiffs. However, Plaintiffs' counsel conceded at oral argument that Jean–Pierre was the only plaintiff to have ever made any payment out of her settlement to a subrogation agent or health insurance carrier, and therefore is the only claimant seeking repayment under ERISA § 502(a)(1)(B). (Oral Arg. Tr. 28, Oct. 21, 2009.) Consequently, as a preliminary matter, Count I is dismissed as to all Defendants other than Aetna and Rawlings, the health insurance carrier and subrogation vendor against whom Jean–Pierre brings her claim.

Defendants Aetna and Rawlings argue that Jean–Pierre has not stated a viable claim for relief against them because she has not sufficiently pled exhaustion of administrative remedies, a prerequisite to bringing an ERISA action. The Court agrees.

"[T]he federal courts—including this Circuit—have recognized a 'firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 443 (2d Cir.2006)(quoting *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir.1993)). This requirement is aimed at helping to "reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir.1980). The exhaustion requirement is "purely a judge-made concept that developed in the absence of statutory language demonstrating that Congress intended to make ERISA administrative exhaustion a jurisdictional requirement." *Paese*, 449 F.3d at 445.

In *Paese v. Hartford Life & Accident Ins. Co.*, the Second Circuit held that the failure to exhaust administrative remedies does not deprive courts of subject matter jurisdiction, but is rather an affirmative defense. Contrary to Jean–Pierre's assertion, that holding, however, does not alter the "firmly established" policy that plaintiffs must exhaust administrative remedies in ERISA actions. Indeed, in cases following *Paese*, courts in this Circuit have explicitly noted that "*Paese* does not remove the requirement that the plaintiff exhaust his administrative remedies." *Egan v. Marsh & McLennan Cos., Inc.*, 2008 WL 245511, 07 Civ. 7134, 2008 U.S. Dist. LEXIS 6647 (S.D.N.Y. Jan. 29, 2008)(dismissing a plaintiff's ERISA claim for failure to exhaust administrative remedies where plaintiff made no allegation that he exhausted any of his administrative remedies or that his pursuit of administrative remedies under the plans at issue would be futile)(quoting *Novella v. Empire State Carpenters Pension Fund*, No. 05 Civ. 2079, 2007 U.S. Dist. LEXIS 63540, 2007 WL 2417303, at *3 (S.D.N.Y. Aug. 28, 2007)); accord *Merkent v. SI Bank &*

*Trust Spring 2004 Severance Benefit Plan,* No. 05 Civ. 2449, 2006 U.S. Dist. LEXIS 16508, 2006 WL 898086, at *2 (E.D.N.Y. Apr. 5, 2006)(dismissing plaintiff's ERISA claim for failure to exhaust administrative remedies where the severance plan at issue contained a provision allowing for appeal, but plaintiff failed to file an appeal).

■ The Amended Complaint states in an allegation common to all Plaintiffs "that all conditions precedent including the exhaustion of administrative remedies to maintaining this action have been performed or have occurred or are futile." (Am. Compl. ¶ 47.) This pleading is insufficient. It is well established that ERISA complaints containing bald assertions that administrative remedies have been exhausted do not withstand a 12(b)(6)motion. *See Hoffman v. Empire Blue Cross & Blue Shield,* No. 96–5448, 1999 WL 782518, *13 (S.D.N.Y. Sept. 28 1999); *American Medical Ass'n v. United Healthcare Corp.,* No. 00–2800, 2008 WL 3914868, *13 (S.D.N.Y. Aug. 22, 2008) (dismissing ERISA claims that contained a "blanket assertion" of exhaustion of administrative remedies). While a plaintiff may be excused from exhausting administrative remedies where such exhaustion would be futile, the Second Circuit requires a "clear and positive showing that seeking review by [the defendant] would be futile ..." *Jones v. UNUM Life Ins. Co. of Am.,* 223 F.3d 130, 140 (2d Cir.2000) (citation omitted). In this case, Jean–Pierre has failed to allege any facts from which the Court might infer that her pursuit of administrative remedies under the plan at issue would be futile.

Jean–Pierre contends that her counsel's letters to Rawlings "disputing the claims and citing legal authority" and "requesting documentation from said Defendants to justify the claims" should be considered sufficient exhaustion of remedies. (*See* Pls. Opp. to Defs. Aetna, Rawlings, et al. 18.) Further, plaintiff argues that she was never told of her right and/or obligation to follow the detailed grievance procedure set forth in her plan.[5] *Id.* These arguments fail. Under Second Circuit case law, courts look to whether plaintiffs have utilized and exhausted administrative remedies *under the plan* at issue, rather than pursuant to plaintiff's understanding of what may constitute the best method of addressing her claims. *Egan,* 2008 WL 245511, at *10, 2008 U.S. Dist LEXIS 6647 at *39; *See, e.g. Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989) (affirming district court's denial of plaintiff's motion to amend complaint where plaintiff "made no attempt, as required to exhaust the administrative remedies provided for under the plan.") Jean–Pierre does not allege in the Amended Complaint that corresponding with Rawlings constituted administrative remedies as provided for under the plan, or that she understood them to qualify as such.

Accordingly, Jean–Pierre's claim for repayment is dismissed for failure to exhaust administrative remedies and the Defendants' Motions to Dismiss the first count for repayment are GRANTED.

*II.   Declaratory Judgment (Count II)*

■ Plaintiffs' second count is for "Declaratory Relief" for the ERISA violations alleged in the First Count. Specifically,

---

5. Jean–Pierre's plan contains a detailed grievance procedure. *See.* Decl. Scott Gordon, Dec. 22, 2008, Ex. A., pp. 70–71. The procedure requires that dissatisfied covered persons first contact the Aetna Customer Service Department in an effort to resolve complaints. *Id.* If that process does not produce a resolution, the covered person is then required to file a formal grievance which is subject to review by a Grievance Committee. *Id.* The Grievance Committee's decision is appealable first to the "1st level Grievance Committee," and finally to the "2nd level Grievance Committee." *Id.*

Plaintiffs "seek [sic] a declaration of their rights and the class members' rights, pursuant to 28 U.S.C. Section 2201, finding that the laws that govern ERISA plans prohibit the Defendants from pursuing reimbursements directly from the Plaintiffs' third-party personal injury settlements." (Am. Compl. ¶ 128.) Plaintiffs also seek a declaration that the subrogation and/or reimbursement provisions of the Defendants' respective insurance plans only provide Defendants with a right of subrogation against a "No–Fault" carrier. (Am. Compl. ¶ 127.) Further, Plaintiffs state that they "are in doubt a bout their rights under each of the respective ERISA governed plan as it relates to their obligation to repay the Defendants out of their personal injury settlements for medical bills." (Am. Compl. ¶ 126.)

The Declaratory Judgment Act does not "provide an independent cause of action." *In re Joint E. & S. Dist. Asbestos Litig.,* 14 F.3d 726, 731 (2d Cir.1993). Rather, "[i]ts operation is procedural only—to provide a form of relief previously unavailable. Therefore, a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *Id.* As the Second Circuit made clear in *Starter Corp. v. Converse, Inc.,* 84 F.3d 592, 594–95 (2d Cir.1996), in determining its jurisdiction over a claim under the Declaratory Judgment Act, a court must "determine whether the dispute presents a substantial controversy or merely an abstract question." *Id.* at 594. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 595 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). The Court has found that no

Plaintiff has stated a viable ERISA claim for relief and therefore there is no substantial controversy remaining between the Parties. Consequently, the declaratory judgment claim must be dismissed against all Defendants.

■ Nor would this action otherwise be ripe for declaratory adjudication under ERISA's provision granting a participant or beneficiary the right to "clarify his rights to future benefits under the terms of the plan ..." 29 U.S.C. § 1132(a)(1)(B). An action seeking to "clarify ... rights to future benefits" is still subject to the same exhaustion requirement as is an action to recover benefits due. *See Kennedy v. Blue Cross & Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993). For the reasons previously discussed, Jean–Pierre has failed to allege any facts which, if true, would demonstrate that she has taken any steps to seek an administrative determination of her rights through her plan's grievance procedure. The Amended Complaint does not assert that any other Plaintiff followed the administrative remedies detailed in their respective plans. The Court found the bald allegation that "all conditions precedent [to filing suit] including exhaustion of administrative remedies ... have occurred or are futile" (Am. Compl. ¶ 47) is insufficient to save Jean–Pierre's claim from dismissal and the same applies to all other named Plaintiffs.

Defendants' Motion to Dismiss the Second Count is thereby GRANTED as to all Defendants.

### III.   ERISA § 502(c)(7)(Count III)

In the Third Count, Plaintiffs state that "Defendants failed to respond or comply with requests for documentation in violation of 29 U.S.C. 1132, et seq." and seeks, for each plaintiff, $100 per day, "as per ERISA 502(c)(7) ..." (Am. Compl. ¶ 131.) Plaintiffs have voluntarily withdrawn this

count, and therefore, this claim is dismissed against all Defendants.

### IV. The Fair Debt Collection Practices Act (Count IV)

■ The FDCPA prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. 1692e.[6] A "debt collector" is defined as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6) *see Franceschi v. Mautner–Glick Corp.,* 22 F.Supp.2d 250, 253 (S.D.N.Y.1998).

Plaintiffs' Fourth Count alleges that Defendants Rawlings, HRI, and Ingenix ("Subrogation Agent Defendants") violated the FDCPA, 15 U.S.C. § 1692 *et seq.* (Am. Compl. ¶ 132.) In the Amended Complaint, Plaintiffs allege that the Subrogation Agent Defendants—acting on behalf of health insurance carriers[7]—"provided subrogation services" through Claims Recovery Service Agreements, "acted as a debt collector" and "undertook various collection efforts in violation of FDCPA," included but not limited to Sections 804(6),

805(a)(2), 807(2), 807(5), 807(10), 807(11) and 809. (Am. Compl. ¶¶ 27, 28, 33, 34, 59, 77). Further, Plaintiffs allege that the unfair debt collection practices were "illegal, improper, caused to harass and/or abuse the plaintiffs herein and stated false and/or misleading representations." (Am. Compl. ¶ 134.)

The Subrogation Agent Defendants point to several provisions of the FDCPA to argue that they are not covered by the Act. The Court agrees that these Defendants fall within the exception to the definition of a debt collector carved out by Section 1692a(6)(F)(ii) of the statute. As a result, the Court will not reach the additional bases for the Defendants' argument pertaining to dismissal of the FDCPA claim.[8]

*Section 1692a(6)(F)(iii)* exempts from the definition of "debt collector"

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person.

§ *1692a(6)(F)(iii).* Thus, the FDCPA is inapplicable to "collection efforts by those who obtained the right to payment on the debt before the debt was in default." *Franceschi,* 22 F.Supp.2d at 253; *See also Healy v. Jzanus Ltd.,* No. 02 CV 1061, 2006 VJL 898067, at *5 (E.D.N.Y. Apr. 4,

---

**6.** While the Defendants dispute that a subrogation claim is a "debt" under the FDCPA, the Court will assume without deciding that it is for purposes of this motion.

**7.** Plaintiff alleges that (1) Rawlings acted on behalf of Health Insurance Plan of Greater New York, d/b/a HIP Insurance Company of New York, Oxford Health Plans, Inc., Aetna Health Inc., d/b/a Aetna Health Insurance Company of New York, Health Net of New York, Inc., as well as unknown Corporate Does; (2) Healthcare Recoveries Inc. acted on behalf of Alicare, Inc. and Group Health

Incorporated, as well as unknown Corporate Does; and (3) Ingenix acted on behalf of United Healthcare of New York, Inc., d/b/a United Healthcare Insurance Company of New York, as well as unknown Corporate Does.

**8.** Defendants argue that reimbursement is not a "debt" within the meaning of the FDCPA. For purposes of this discussion, the Court assumes without deciding that reimbursement is a "debt" for purposes of the FDCPA.

2006) (holding that the FDCPA did not apply to a collection agency retained by a hospital seeking Medicaid reimbursement because the underlying debt was not in default even though the agency identified itself as a debt-collector).

In this case, Plaintiffs do not allege the existence of any debt that was in default at the time it was obtained by the Subrogation Agent Defendants. The earliest date the Plaintiffs' debts could have been in default was the date they first received payment from any third parties in connection with their motor vehicle accidents. *See e.g. Hamilton v. Trover Solutions, Inc.*, No. Civ. A. 01–650, 2003 WL 21105100 at 3–4 (E.D.La. May 13, 2003) (holding that "it was not possible for [plaintiff] to be in default until he began receiving payments from third parties," and therefore finding that HRI, a co-Defendant in this case, was not a "debt collector" under the FDCPA); *see also Dantin v. Rawlings Co., L.L.C.*, No. 03–116–A, 2005 WL 6075786 (M.D.La. Apr. 13, 2005) (holding that Rawlings—a co-Defendant in the present action—is not a "debt collector" within the meaning of the FDCPA).

In this case, the documents supporting the Plaintiffs' claim—namely the letters attached to the Plaintiffs' Amended Complaint and the settlement dates provided to the Court by Plaintiffs' counsel[9]—clearly demonstrate that in the case of each Plaintiff, the Subrogation Agent Defendants sent letters asserting their right to subrogation before any Plaintiff obtained a third-party settlement. It is clear then that in each case, the Subrogation Agent Defendants obtained the right to reimbursement before any debt was in default.[10] Accordingly, the Subrogation

---

9. Pursuant to a Court order dated Nov. 4, 2009, Plaintiffs' counsel provided the Court with settlement dates for Plaintiffs Trinchese, Haskell, Kesselman, Aiello, Jean–Pierre and Chait.

10. *Prescott:* The Amended Complaint alleges that HRI began attempting to collect on Prescott's debt on January 11, 2006. (Am Compl. ¶¶ 88–89). It is undisputed that Prescott did not receive her "personal injury settlement" until June 1, 2006. (Nagy Decl. Ex. 3, Closing Statement.)

*Ram:* The Amended Complaint alleges that HRI began attempting to collect on this debt on June 28, 2006. (Am. Compl. ¶¶ 82–83). It is undisputed that Ram did not receive her personal injury settlement until July 18, 2007. (Nagy Decl. Ex. 3, Closing Statement), over a year later.

*Kesselman:* The Amended Complaint alleges that Rawlings presented a claim for reimbursement beginning on December 7, 2007 (Am. Compl. ¶ 53). Kesselman reached a third-party settlement on April 24, 2008 (Am. Compl. Ex. 1, Letter dated April 24, 2008 from Goldberg to Rawlings stating that "case settled for 10,000.")

*Aiello:* The Amended Complaint states that Rawlings began attempting to collect its debt on May 2, 2007 (Am. Compl. ¶ 58; Am. Compl., Ex. 2). Aiello settled her personal injury case on June 26, 2007 (according to Plaintiffs' counsel's letter to the Court dated November 4, 2009).

*Haskell:* The Amended Complaint states that Haskell began receiving reimbursement requests from Rawlings on June 2, 2005 (Am. Compl. ¶ 70). Haskell settled her personal injury case on August 18, 2006 (Am. Compl., Ex. 4, attached Release.)

*Chait:* The Amended Complaint states that Chait began receiving reimbursement requests from Rawlings on January 23, 2006 (Am. Compl. ¶ 64; Am. Compl., Ex. 3, Letter from Rawlings dated January 23, 2006). Chait settled her personal injury case on August 9, 2007 (Am. Compl. Ex. 3, Letter from Goldberg to Rawlings dated July 2, 2008 stating that "this case was settled for $5,000 on August 9, 2007.")

*Trinchese:* The Amended Complaint alleges that Ingenix first sent a letter seeking reimbursement to Trinchese on January 24, 2008 (Am. Compl. ¶ 76; Am. Compl., Ex. 5.) Trinchese settled with a third-party on December 18, 2008 (according to Plaintiffs' counsel's letter to the Court dated November 4, 2009).

*Jean–Pierre:* The Amended Complaint alleges that Jean–Pierre started receiving requests for

Agent Defendants are exempted from the statutory definition of "debt collector."

*Plaintiffs' Opposition*

Plaintiffs do not address why the exemption contained in Section 1692a(6)(F)(iii) should not be invoked. Plaintiffs do not contest the "in default" and "obtained" dates asserted by Defendants. Rather, Plaintiffs recite the statutory definition of "debt collector," and summarily conclude that the Subrogation Agent Defendants are in the business of collecting debts and are "debt collectors." In support of their position, Plaintiffs rely upon the Fifth Circuit's opinion in *Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385 (5th Cir.2002) (*"Hamilton I"*).

In *Hamilton I*, the plaintiff was in a motor vehicle accident and sued HRI for attempting to enforce a health insurer's subrogation and reimbursement rights. The district court granted HRI's motion to dismiss on the basis that Hamilton's alleged debt was not a "debt" under the FDCPA, but it did not initially rule on the issue of whether HRI was a "debt collector" under the statute. *Id.* at 393–94. The Fifth Circuit reversed, holding that the alleged debt was a "debt" for FDCPA purposes. *Id.* at 391–393. The Fifth Circuit then remanded, noting that "[r]esolution of the 'debt collector issue in this case is clearly tied to a determination of the circumstances surrounding the inception of the debt. Accordingly, we REMAND to the district court for further consideration.'" *Id.* at 394. On remand, the district court found that HRI—the same Defendant as in the present action—is *not* a

"debt collector" under the FDCPA because it obtains the debt prior to the time it is in default, thereby qualifying under the exemption under clause (F)(iii) of 15 U.S.C. § 1692a(6). *Hamilton v. Trover Solutions, Inc.*, No. Civ. A. 01–650, 2003 WL 21105100 (E.D.La. May 13, 2003).

In *Hamilton v. Trover Solutions, Inc.*, 104 Fed.Appx. 942 (5th Cir.2004)(*"Hamilton II"*) the Fifth Circuit affirmed the district court's summary judgment ruling "[f]or the reasons given by the district court." *Id.* at 944. Thus, the *Hamilton* cases provide no support for Plaintiffs' position, but rather support the Defendants' view that the Subrogation Agent Defendants are exempt from the definition of "debt collector."

Lastly, Plaintiffs request limited discovery pertaining to the whether the Subrogation Agent Defendants are in the business of collecting debts on behalf of their clients, health insurance carriers. In this case, additional discovery is not necessary because the key facts necessary for the resolution of the FDCPA claim are undisputed. Specifically the parties do not dispute: (1) the nature of the contract relationship between the subrogation agents and the health insurance carriers;[11] (2) when the subrogation agents first received notice of potential subrogation claims against Plaintiffs; and (3) when Plaintiffs settled with third-party tortfeasors. *See Hamilton v. Trover Solutions, Inc.*, 104 Fed.Appx. 942 (5th Cir.2004)(finding that additional discovery was unnecessary when these key facts were undisputed).

---

reimbursement on December 16, 2003 (Am. Compl. ¶ 93). According to Plaintiffs' counsel, Jean–Pierre's personal injury case settled on December 22, 2003.

11. The contracts between the subrogation agents and their clients, health insurance carriers, were submitted to the Court on November 3, 2009. No parties have disputed the authenticity of these agreements. Further, the parties do not dispute that the Subrogation Agent Defendants were responsible for the subrogation and reimbursement claims provided by the health insurance companies.

Accordingly, Plaintiffs' claim under the FDCPA fails and Defendants' Motions to Dismiss the FDCPA claim are GRANTED.

## CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are GRANTED and this action is hereby DISMISSED in its entirety without prejudice. The Clerk of the Court is directed to close this case.

**SO ORDERED.**