**STARTER CORPORATION,**
.**Plaintiff–Appellant,**

v.

**CONVERSE, INC., Defendant–Appellee.**

**No. 1318, Docket 95–9150.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 6, 1996.

Decided May 23, 1996.

J. Joseph Bainton, Ross & Hardies, New YorkCity, for Appellant, Starter Corporation.

Harley I. Lewin, Lewin & Laytin, New York City, for Appellee, Converse, Inc.

Before: OAKES and McLAUGHLIN, Circuit Judges, and OWEN, District Judge.*

PER CURIAM:

The Starter Corporation appeals from the district court's dismissal of its declaratory judgment complaint against appellee Converse, Inc. on the ground that the court lacked subject matter jurisdiction, and its pronouncement that it would decline to exercise declaratory judgment jurisdiction even if an "actual case or controversy" did exist.

Starter is a manufacturer of athletic apparel and Converse is a manufacturer of athletic footwear and licensor of sports apparel. Both parties possess trademark rights in versions of a five-pointed star. This dispute arises out of Starter's planned use of its registered trademarks, a five-pointed star in various designs, called Starter Marks or House Marks, on athletic footwear. In anticipation of this use, Starter filed for registration of its Starter Marks on athletic footwear with the Patent and Trademark Office. Converse opposed the registration of these applications before the Trademark Trial and Appeal Board on the ground that if used on footwear, the Starter Marks would create a likelihood of confusion with Converse's star mark, and thereafter advised Starter that if Starter brought any footwear to the marketplace bearing the Starter Marks, Converse would sue Starter for trademark infringement.

Starter, however, commenced this action on May 19, 1995, prior to bringing any Starter footwear to the marketplace, seeking declaratory relief concerning its right to use its House Marks on athletic footwear. On July 19, 1995, Converse moved to dismiss the complaint for lack of subject matter jurisdiction, and on November 13, 1995, the district court granted the motion dismissing Starter's complaint on the ground that the complaint failed to allege an actual "case or controversy" as required for subject matter jurisdiction under both Article III of the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. 2201(a). The dis-

trict court further noted that even if an actual case or controversy had existed, it would have exercised its discretion and declined to rule in the absence of any actual rendering of Starter's footwear in the marketplace. This appeal followed.

Starter's first contention before us is that the district court was in error in holding that it lacked subject matter jurisdiction over Starter's declaratory judgment action. On appeal from such determination, we review the district court's factual findings for clear error and legal conclusions *de novo*. *In re Vogel Van & Storage Inc.*, 59 F.3d 9, 11 (2d Cir.1995).

The Declaratory Judgment Act, 28 U.S.C. 2201(a), provides that

> in a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and legal relations of any party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

In addition, in order for a federal court to have jurisdiction over an "actual controversy," a federal question "arising under the Constitution, laws or treaties of the United States" must be involved, 28 U.S.C. § 1331, since it is well-settled that the Declaratory Judgment Act does not expand the jurisdiction of the federal courts. *Albradco Inc., v. Bevona*, 982 F.2d 82, 85 (2d Cir.1992) (citations omitted). Accordingly, we must first determine whether a federal question exists, and if it does—thereby providing the court with original jurisdiction—we must then determine whether the dispute presents a substantial controversy or merely an abstract question. There is no bright line here. As the Supreme Court explained in *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941),

---

* Honorable Richard Owen, of the United States District Court for the Southern District of New York, sitting by designation.

[t]he difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

If both a federal question and an actual controversy exist, then declaratory judgment jurisdiction may appropriately be exercised. If no such controversy exists, however, the courts are prohibited from rendering an advisory opinion which would be beyond our constitutional power. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

■ Starter's complaint asserts that jurisdiction is predicated on 28 U.S.C. § 1338, which confers original jurisdiction upon the district court in "any civil action arising under any Act of Congress relating to patents ... copyrights, and trademarks...." The Lanham Act, the only Act of Congress relevant to this action, in turn applies only to a mark "use[d] in commerce", defined in 15 U.S.C. § 1127 as a mark "(1) on goods when (A) placed in any manner on the goods ... and (B) the goods are sold or transported in commerce...."

Converse contends that because Starter has not yet begun the manufacture and sale of its footwear, Starter athletic shoes are not yet "in commerce", thus Starter's footwear is not yet subject to the Lanham Act, and therefore no statutory basis for federal question jurisdiction exists. In response, Starter contends that because it has already registered and used the Starter Marks on athletic apparel, the marks are "in commerce" and therefore satisfy the requirements of the Lanham Act, even though Starter has not yet used the Starter Marks on footwear in commerce. Starter, as observed, also owns federal registrations for its House Marks, and has an undisputed real, legal interest in their

use. We conclude that Starter's prior use of its marks places the marks sufficiently "in commerce" to sustain federal question jurisdiction under the Lanham Act.

■ We next turn to the question of whether, at the time the complaint was filed, an actual case or controversy existed. In a declaratory judgment action involving trademarks, the test for an "actual case or controversy" has two prongs, both of which must be satisfied in order to establish declaratory judgment jurisdiction: (1) has the defendant's conduct created a real and reasonable apprehension of liability on the part of the plaintiff, and (2) has the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant. *Windsurfing Intern., Inc. v. AMF Inc.*, 828 F.2d 755, 757–58 (Fed.Cir.1987) (applying Second Circuit law). Neither party disputes that the first prong of this test has been satisfied by Converse's unambiguous communication to Starter of its intent to bring an infringement suit should Starter engage in the sale of footwear bearing its House Marks. However, in reliance upon *Windsurfing*, Converse submits that absent Starter's engaging in the manufacture and sale of footwear bearing the Starter Marks, Starter cannot be said to be using the mark for the purpose of establishing an adversarial relationship that meets the "actual case or controversy" standard, and thus, Converse contends, there is no declaratory jurisdiction.

■ The district court below saw Starter as pleading "no more than a desire and intention to use its trademark on athletic footwear at a future time," and concluded that *Windsurfing* required more before athletic footwear bearing the Starter Marks can satisfy the second prong of the justiciability analysis. Starter, however, contends before us, as it did below, that it has pleaded more, and that actual use of the mark is not the appropriate test here, instead urging that the "imminent intention and ability" test, which has its origins in patent case law, is the applicable test. *See, e.g., Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 89–90 (2d Cir. 1963). Applying that test, an actual case or controversy exists where a party has engaged in a course of conduct evidencing a

"definite intent and apparent ability to commence use" of the marks on the product. *See Golden Gulf Corp. v. Jordache Enterprises, Inc.,* 896 F.Supp. 337, 340 (S.D.N.Y. 1995), *citing G. Heileman Brewing Co. v. Anheuser–Busch, Inc.,* 873 F.2d 985 (7th Cir. 1989).

■ We find this test appropriate here. Declaratory judgment actions involving trademarks are analogous to those involving patents, *Windsurfing,* 828 F.2d at 757; *Manufacturers Hanover Corp. v. Maine Sav. Bank,* 225 U.S.P.Q. 525, 526, 1985 WL 181 (S.D.N.Y.1985), and principles applicable to declaratory judgment actions involving patents are generally applicable with respect to trademarks. *See Banff, Ltd. v. Federated Dept. Stores, Inc.,* 657 F.Supp. 336, 339 (S.D.N.Y.1987) (applying the *Wembley* "immediate intention and ability" test to ascertain justiciability in trademark dispute); *Manufacturers Hanover Corp.,* 225 U.S.P.Q. at 526 (extending liberal interpretation of Declaratory Act's "actual case or controversy" requirement from patent infringement to trademark disputes); 6A J. Moore, *Moore's Federal Practice* § 57.20 at 57–222, 57–223 (citations omitted). Moreover, in articulating the second prong of the justiciability inquiry, we note that the court in *Windsurfing* relied upon the trademark case of *Polaroid v. Berkey,* 425 F.Supp. 605 (D.Del.1976) in which the court acknowledged the applicability of the immediate intention and ability test by its statement that "the most liberal interpretation of justiciability will not admit to an active controversy in the absence of either some imminent infringing conduct *or some assertion of the same.*" *Id.* at 609 (emphasis added).

■ Also persuasive in considering the applicability of this test is the policy animating the Declaratory Judgment Act, which is to enable parties to adjudicate their disputes before either suffers great damage. *In re Combustion Equipment Associates,* 838 F.2d 35, 37 (2d Cir.1988). Declaratory judgment actions are particularly useful in resolving trademark disputes, in order to promptly resolve controversies where the alleged owner of a trademark right threatens to sue for infringement. Accordingly, in such a case,

the finding of an actual controversy should be determined with some liberality. *Larami Corp. v. Amron,* 1994 WL 369251, *4 (S.D.N.Y., July 13, 1994); *Manufacturers Hanover Corp.,* 225 U.S.P.Q. at 526. A more restrictive view would in this case require Starter to go to substantial expense in the manufacture, marketing, and sale of its footwear, and subject itself to considerable liability for a violation of the Lanham Act before its right to even engage in this line of commerce could be adjudicated. We do not read the Act as requiring this. Accordingly, we turn to whether Starter has demonstrated the imminent intent and ability to use its House Marks on athletic footwear in order to determine whether the second prong of the justiciability inquiry is satisfied.

■ To demonstrate an actual intent and ability to imminently engage in the allegedly infringing conduct, Starter must show more than a vague or general desire to use its House Marks. *See Wembley,* 315 F.2d at 90; *Windsurfing,* 828 F.2d at 758. It must be engaged in "meaningful preparation," *Arrowhead Indust. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 6 U.S.P.Q.2d 1685, 1689 (Fed. Cir.1988), such that it is "actively preparing to produce the article in question. This is the last point before the point of no return." *G. Heileman,* 873 F.2d at 990. Whether a declaratory judgment plaintiff has so demonstrated this must be decided on a case-by-case basis, *Aetna,* 300 U.S. at 239–41, 57 S.Ct. at 463–64; *Wembley,* 315 F.2d at 89.

Starter's complaint alleges that but for Converse's threat of a trademark infringement suit, Starter would have been immediately prepared, at the time the complaint was filed, to begin manufacture and sale of shoes bearing the Starter Marks. It has invested a significant amount of time and money in this project; designed styles and prepared prototype shoes; conducted a consumer survey; made strategic decisions regarding who should manufacture the shoes; hired an external licensing agent; and attempted to find a manufacturing partner. It is this final step that Starter claims has been delayed by Converse's threats of litigation. Accordingly, we view the total situation here distinguishable from that in *Windsurfing,* 828 F.2d at 758,

where the court found that the declaratory plaintiff had failed to engage in any conduct that brought it into adversarial conflict with the declaratory defendant regarding the use of trademarks. In the instant case, the steps Starter has taken are specific and evidence a concrete intention to use its House Marks. Accordingly, there is the requisite adversarial conflict here to meet the actual case or controversy requirement, and declaratory jurisdiction is therefore proper.

 Having concluded that subject matter jurisdiction exists, we turn to the question of whether the district court properly exercised its discretion in declining to take declaratory judgment jurisdiction in any event. We review the district court's decision to refuse declaratory relief *de novo* and may exercise our independent judgment in determining whether a declaratory judgment action should be entertained, and thus, if we are of a different view, we may substitute our judgment for that of the court below. *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 736 (2d. Cir.1992).

While it is true that a district court's determination whether to exercise declaratory jurisdiction is denominated as discretionary, *Muller v. Olin Mathieson Chemical Corp.*, 404 F.2d 501, 505 (2d Cir.1968), a district court is required to entertain a declaratory judgment action "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Cas. Co.*, 977 F.2d at 737. Here, a declaratory judgment will definitively determine appellant's rights to use the Starter Marks in the athletic footwear market and resolve the demonstrated uncertainty between the parties that has been generated by this controversy, avoiding attendant expenses. Appellant provided the district court with a sample, prototype shoe of the type intended for sale to consumers. Because there is no uncertainty as to how it will use its House Marks on its athletic footwear, the district court is therefore in a position to conduct a trademark infringement analysis. Accordingly, we conclude that this case is one where declaratory jurisdiction should be exercised.

In sum, we find an actual case or controversy to exist conferring subject matter jurisdiction on the district court, and further concluding that because a declaratory judgment would clarify the legal relations at issue between the parties and afford relief from the controversy regarding whether Starter can use its House Marks in the athletic footwear market, declaratory jurisdiction should be exercised here, and we therefore reverse and remand for further proceedings accordingly.