GELMART INDUSTRIES, INC., Plaintiff,

v.

EVEREADY BATTERY COMPANY, INC., Defendant.

No. 13 Civ. 6310(PKC).

United States District Court, S.D. New York.

Signed April 14, 2014.

Filed April 15, 2014.

Robert David Garson, Garson, Segal, Steinmetz LLP, New York, NY, for Plaintiff.

Sarah E. O'Connell, Fulbright & Jaworski L.L.P., New York, NY, Shelby Knutson Bruce, Timothy Michael Kenny, Fulbright & Jaworski LLP, Minneapolis, MN, for Defendant.

## MEMORANDUM AND ORDER

CASTEL, District Judge.

Plaintiff Gelmart Industries, Inc. ("Gelmart") plans to sell and market a line of flesh-colored underwear using the trademark "Skintimates." It has presented the product line to potential retail partners and applied to the United States Patent and Trademark Office ("USPTO") for registration of the Skintimates word mark. Defendant Eveready Battery Company, Inc. ("Eveready") sells and markets shaving-related products using a "Skintimate" word mark. When Eveready learned of Gelmart's proposed Skintimates mark, it sent two cease-and-desist letters. It subsequently filed a statement in opposition to trademark registration with the USPTO, asserting that Gelmart's proposed Skintimates mark would infringe and dilute Eveready's own Skintimate mark.

Shortly after receiving the second cease-and-desist letter, Gelmart commenced this action seeking a declaratory judgment of non-infringement pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Having previously requested Gelmart to abandon its planned use of the Skintimates mark, and having asserted to the USPTO that the proposed Gelmart mark is dilutive and infringing, Eveready now argues that the action is not yet ripe, and moves to dismiss the First Amended Complaint (the "Complaint") pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P.

For the reasons explained, Eveready's motion is denied.

## BACKGROUND

"Gelmart designs, manufactures and sells intimate apparel and lingerie to major retailers." (Compl't ¶ 2.) In early 2013, Gelmart began to develop "a new line of intimate apparel (bras, panties etc.)" using "neutral colors and skin pantones" to be sold and marketed under the brand "Skintimates." (Compl't ¶¶ 11, 14.) Gelmart presented the proposed product line to retailers, who indicated that they would be interested in ordering such items. (Compl't ¶ 16.)

Gelmart performed a trademark search for the word mark Skintimates, and "confirmed that there was no word mark in the intimate apparel and the wider apparel marketplace...." (Compl't ¶ 12.) On June 25, 2013, Gelmart applied for trademark registration with the USPTO, seeking to use the Skintimates word mark for "Body suits; Bras; Camisoles; Cooties; Hosiery; Leggings; Lingerie; Loungewear; Maternity bras; Maternity lingerie; Maternity sleepwear; Pajamas; Panties; Panties, shorts and briefs; Shapewear, namely girdles, bras, shaper briefs and shaper tops; Sleepwear; Slips; Sports bra; Sweatpants; T-shirts; Tights; Yoga pants; Yoga shirts." (Compl't ¶ 13 & Ex. A.) Gelmart's application sought only a word mark for the term "Skintimates," and did not include design elements. (Compl't Ex. A.) A USPTO trademark examiner reviewed the application and

scheduled the mark "to be published for opposition on September 20, 2013." (Compl't ¶ 17.)

Counsel to Eveready twice sent the same cease-and-desist letter to counsel to Gelmart, first on August 8, 2013 and later on September 6, 2013, in which it asserted ownership in a federally registered Skintimate mark. (Compl't ¶¶ 21–23.) The letter asserted that Eveready and Gelmart sell "closely related goods" that are "directed to the same category of consumers." (Compl't ¶ 26.) It stated in part: "In order to protect its valuable trademark rights, Eveready requests that Gelmart: (1) abandon the above-reference trademark application; (2) agree to cease all current use of SKINTIMATES (if any-we note that the application is based on an intent to use); and (3) agree to refrain from future use and registration of SKINTIMATE, SKINTIMATES or equivalents." (Compl't Ex. D.)

As described in the Complaint, "Eveready is a business whose operations are largely limited to the razorblade, cosmetics, batteries and lightbulb markets." (Compl't ¶ 18.) Eveready holds approximately 772 registered trademarks. (Compl't ¶ 19.) It uses the Skintimate mark for shaving-related products, such as razors, gels and foams. (Compl't ¶ 24.) The Complaint asserts that Eveready has applied for, but not yet filed, a statement of use for the Skintimate mark with regard to a variety of additional toiletries, including deodorants, powders, soaps and colognes. (Compl't ¶ 25.) According to the Complaint, nine of Eveready's 772 marks are used in the apparel industry. (Compl't ¶ 19.) Only four of its apparel-related marks are currently active, and all of them contain the word "Energizer." (Compl't ¶ 19.) The Complaint asserts that Eveready does not participate in the intimate-apparel marketplace. (Compl't ¶ 20.)

Gelmart commenced this action on September 9, 2013, and asserts that it has "an objectively reasonable apprehension that Eveready would file a suit for trademark infringement based on Gelmart's product development and application for its SKINTIMATES mark...." (Compl't ¶ 31.) One month later, on October 9, 2013, Eveready filed a statement in opposition to Gelmart's trademark application with the USPTO. (Compl't ¶ 32 & Ex. F.) This opposition filing asserted, among other things, that Gelmart's proposed mark was confusingly similar to Eveready's Skintimate mark, that Gelmart's "goods are within Eveready's zone of natural expansion," that the companies market products to the same category of consumers and that Gelmart's Skintimates mark would cause consumer confusion in the marketplace. (Compl't Ex. F ¶¶ 10–20, 22–24.)

The Complaint observes that Eveready's filing with the USPTO asserts "the basic tenets of trademark infringement and dilution...." (Compl't ¶ 33.) The Complaint states that based on marketplace interest and its designs for the Skintimates line, "Gelmart is poised to effectuate full product launch," but that its plans "have been affected" by the expectation that Eveready will sue for infringement upon product launch. (Compl't ¶ 34.) Count I of the Complaint seeks a Declaratory Judgment that the Skintimates mark proposed by Gelmart does not infringe Eveready's Skintimate mark. (Compl't ¶¶ 36–40.) Count II asserts a claim of tortious interference under New York law. (Compl't ¶¶ 41–44.) As noted below, Gelmart now states that its tortious interference claim is voluntarily dismissed.

RULE 12(b)(1) AMD 12(b)(6) STANDARDS.

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper 'when the district court lacks the

statutory or constitutional power to adjudicate it.'" *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir.2009) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000)). Because ripeness goes to the exercise of subject matter jurisdiction, a ripeness challenge is properly raised under Rule 12(b)(1). *See Auerbach v. Bd. of Educ. of the Haborfields Cent. School Dist. of Greenlawn*, 136 F.3d 104, 108–09 (2d Cir.1998). Courts weighing a Rule 12(b)(1) motion "borrow from the familiar Rule 12(b)(6) standard, construing the complaint in plaintiff's favor and accepting as true all material factual allegations contained therein." *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 173 (2d Cir.2012).

Under Rule 12(b)(6), to survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

DISCUSSION.

    I. *Because the Complaint Plausibly Alleges a Case of Actual Controversy, Eveready's Motion to Dismiss for Lack of Subject Matter Jurisdiction Is Denied.*

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

■ "The Declaratory Judgment Act confers on federal courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Peconic Baykeeper, Inc. v. Suffolk County*, 600 F.3d 180, 187 (2d Cir.2010) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)). It does not, however, expand the subject matter jurisdiction of the federal courts. *See Medtronic, Inc. v. Mirowski Family Ventures. LLC*, —— U.S. ——, 134 S.Ct. 843, 848, 187 L.Ed.2d 703 (2014). To qualify as "a case of actual controversy" under the Declaratory Judgment Act, the Supreme Court has "required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937)). There must be "'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (2d Cir.1941)).

■ *MedImmune* "lowered the threshold" for establishing the existence of an actual case or controversy in intellectual property-related declaratory judgment cases. *AARP v. 200 Kelsey Assocs., LLC,* 2009 WL 47499, at *6 (S.D.N.Y. Jan. 8, 2009) (Lynch, J.). Previously, a plaintiff was required to have "reasonable apprehension of imminent suit." *Id.* After *MedImmune,* "so long as '[t]he factual and legal dimensions of the dispute are well defined' and 'nothing about the dispute would render it unfit for judicial resolution,' jurisdiction is not defeated by a party's decision to refrain from taking some action and thus 'make[ ] what would otherwise be an imminent threat [of suit] at least remote, if not nonexistent.'" *Id.* (quoting *MedImmune,* 549 U.S. at 128, 137, 127 S.Ct. 764). A party has taken meaningful steps toward use of a mark when it has invested "significant" time and money in a product, designed styles and prototypes, considered manufacturing options and gauged consumer interest. *Starter Corp. v. Converse, Inc.,* 84 F.3d 592, 596–97 (2d Cir.1996); *see also AARP,* 2009 WL 47499, at *9 (if "a party has produced prototypes or samples of the allegedly infringing products, begun soliciting-and advertising to-potential customers, or otherwise invested significant sums of money in preparation for producing the goods, the case or controversy requirement is likely to be satisfied.") (collecting cases); *Bruce Winston Gem Corp. v. Harry Winston, Inc.,* 2010 WL 3629592, at *4 (S.D.N.Y. Sept. 16, 2010) (Koeltl, J.) (a plaintiff must allege "more than a 'vague or general desire' to use the mark at issue.").

■ Because "[d]eclaratory judgment actions are particularly useful in resolving trademark disputes ... the finding of an actual controversy should be determined with some liberality." *Starter Corp.,* 84 F.3d at 596. Courts "have long accepted jurisdiction" in "situations in which the plaintiff's self-avoidance of imminent injury is coerced by threatened enforcement action of a private party....'" *MedImmune,* 549 U.S. at 130, 127 S.Ct. 764 (emphasis omitted). "A more restrictive view would ... require [a company] to go to substantial expense in the manufacture, marketing, and sale of its [product], and subject itself to considerable liability for a violation of the Lanham Act before its right to even engage in this line of commerce could be adjudicated." *Starter Corp.,* 84 F.3d at 596. "[T]he threat of future litigation remains relevant in determining whether an actual controversy exists." *Nike, Inc. v. Already, LLC,* 663 F.3d 89, 96 (2d Cir.2011), *aff'd, Already, LLC v. Nike, Inc.,* —— U.S. ——, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013). "[S]imply holding litigation in abeyance ... does not eliminate the case or controversy." *Id.*

■ Here, the Complaint and its annexed exhibits allege the existence of adverse legal interests between the parties, with sufficient immediacy to allege a case of actual controversy under the Declaratory Judgment Act. First, Eveready's own statements in its cease-and-desist letter and its public filing with the USPTO establish "adverse legal interests" under the Declaratory Judgment Act. *MedImmune,* 549 U.S. at 127, 127 S.Ct. 764; *Velvet Underground v. Andy Warhol Foundation for the Visual Arts, Inc.,* 890 F.Supp.2d 398, 410 (S.D.N.Y.2012) (Nathan, J.) (collecting cases on adverse legal interests in declaratory judgment actions). While stopping short of using the words "infringement" and "dilution," Eveready has, in sum and substance, asserted that the proposed Gelmart mark is infringing and dilutive. In its cease-and-desist letter, Eveready asserted that the parties' "respective marks are virtually identical, and the

goods are closely related in that they are directed to the same category of consumers." (Compl't Ex. D.) Eveready stated that it was "concerned that Gelmart's use of SKINTIMATES is likely to confuse consumers by suggesting that its goods are somehow associated with Eveready, which of course is not the case." (*Id.*) The letter "requests" that Gelmart abandon its trademark application, agree to cease use of the Skintimates mark, and agree to refrain from future registration of such a mark. (*Id.*)

In its notice of opposition filed with the USPTO, Eveready asserts that its Skintimate mark is valid, strong and undiluted. (Compl't Ex. F ¶¶ 2, 7–11, 14–15.) It asserts that Gelmart's proposed Skintimates mark "is confusingly similar to the SKINTIMATE Mark"; that Gelmart's proposed products "are similar and/or related to" Eveready's products; that Gelmart's products "are within Eveready's zone of natural expansion" and sold to the same consumers; that Gelmart's mark is "likely ... to cause confusion, to cause mistake, or to deceive"; that consumers will believe Skintimates is an Eveready product line; and that Gelmart will benefit from the goodwill associated with Eveready. (*Id.* ¶¶ 16–17, 19–20, 22–23, 25.) At least four times, Eveready asserts to the USPTO that registration of Gelmart's Skintimates mark "would be a source of damage to Eveready...." (*Id.* ¶¶ 23–26.) In essence, throughout its cease-and-desist letter and its USPTO filing, Eveready accused Gelmart of infringing and diluting its mark. *See generally Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 106, 115 (2d Cir.2009) (reciting elements of trademark infringement and dilution); *see also Lee v. Makhnevich*, 2013 WL 1234829, at *4 (S.D.N.Y. Mar. 27, 2013) ("Defendants cannot pretend now that their notices to [plaintiff] were 'just kidding,' or that

[plaintiff] lacked any reasonable apprehension of liability.") (Crotty, J.).

According to Eveready, however, the case is not ripe for adjudication because the Complaint sets forth insufficient detail concerning Gelmart's anticipated launch of the proposed Skintimates line. Without additional facts concerning Gelmart's preparations to launch the Skintimates line, Eveready argues, the Declaratory Judgment claim is vague, abstract and would result in an advisory opinion.

However, the Complaint contains factual allegations about Gelmart's marketing, manufacturing and retail plans that satisfy *Iqbal*'s pleading standard and *MedImmune*'s threshold for justiciability. It asserts that Gelmart has been in business for more than 60 years, and has "long-standing relationships" with suppliers and manufacturers located in China, Indonesia, India, Bangladesh and the Philippines, with the ability to "manufacture and supply product to the U.S. market-place within weeks." (Compl't ¶¶ 9–10.) Gelmart states that it has "pitched the product concept to major retailers" and "held multiple discussions, design and branding meetings" based on retailer interest. (Compl't ¶ 16.) The Complaint annexes marketing prototypes for a Skintimates collar tag and a "Nude Portable Fixture" that would display Skintimates products on sales floors. (Compl't Exs. B & C.) The Complaint asserts that "[h]aving already garnered interest from the marketplace, having designed and offered product for sale bearing the 'SKINTIMATES' mark, Gelmart is poised to effectuate full product launch, such plans have been affected by the actions of Eveready, as infringement claims will be made upon product launch." (Compl't ¶ 34.)

Eveready contends that these allegations are inadequate because they do not assert that Gelmart has actually begun

manufacturing goods or producing Skintimates labels for clothing tags; that Gelmart does not allege that it presented Skintimates artwork to retailers or other outside entities; that the Complaint does not allege the details of Gelmart's product-development process; that Gelmart has not alleged the date of its planned product launch; and that the allegation concerning its meetings with retailers is "vague." (Def. Mem. at 12–17.) *Iqbal* and *MedImmune* do not require such a heightened level of particularity. It is sufficient that Gelmart has alleged that it solicited retailers, designed branding materials, is capable of commencing manufacture of products within weeks, and was "poised" to commence a product launch before Eveready asserted infringement. *See generally Starter Corp.*, 84 F.3d at 596–97; *AARP*, 2009 WL 47499, at *9.[1]

Finally, Eveready argues that, in the event the Court concludes that it has subject matter jurisdiction, it should exercise discretion under the Declaratory Judgment Act and decline to let the action proceed. Eveready contends that it would be unduly prejudiced by litigating a trademark claim when Gelmart's goods are not yet on the market, asserting that unless the competing marks are actually in competition, it would be "unable" to gather evidence on six of the eight trademark-infringement factors set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.1961). It also contends that "it would be impossible to try and conduct a survey" unless both marks are both in active use. (Def. Mem. at 23–25.) Eveready offers no explanation as to why a proper survey could not be constructed or why it would be unable to gather evidence relevant to six of the *Polaroid* factors. The Court declines Eveready's invitation to dismiss the claim on a discretionary basis.

The motion to dismiss the Declaratory Judgment Act claim for lack of subject matter jurisdiction is denied.

### II. *Gelmart's Tortious Interference Claim Is Voluntarily Dismissed.*

Gelmart states that it withdraws its tortious interference claim. (Opp. Mem. at 16.) The claim is therefore deemed voluntarily dismissed.

### CONCLUSION

The defendant's motion to dismiss is DENIED. (Docket # 19.) The Clerk is directed to terminate the motion. Gelmart's tortious interference claim is voluntarily dismissed. The parties are directed to attend a pretrial conference on May 9, 2014 at 11 a.m.

SO ORDERED.

---

1. The authorities cited by Eveready are consistent with the Court's conclusion. *See Starter Corp.*, 84 F.3d at 596–97 (actual case and controversy exists when plaintiff has designed prototypes, solicited views of potential customers and assessed manufacturing details); *Matthews Int'l Corp. v. Biosafe Engineering, LLC*, 695 F.3d 1322, 1330 (Fed.Cir.2012) (claim non-justiciable when device can be used in a manner that does not infringe defendant's patent); *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 750–51 (5th Cir.2009) (claim non-justiciable when a "rather generic depiction" of a bottom-dump trailer was not finalized and plaintiff lacked ability to commence manufacturing); *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F.Supp.2d 234, 244 (S.D.N.Y.2000) (Chin, J.) (claim not justiciable when plaintiff's only preparation for use of mark was a suspended application with the USPTO); *Geisha, LLC v. Tuccillo*, 525 F.Supp.2d 1002, 1013–14 (N.D.Ill.2007) (claim non-justiciable when potential infringer's business preparation consisted of "merely 'driving around looking for a location'" to open a restaurant and "play[ing] around with the menu").