Saleh v. Sulka Trading

# United States Court of Appeals
## for the Second Circuit

AUGUST TERM, 2019

Argued: February 24, 2020
Decided, April 30, 2020

Docket No. 19-2461

ABDUL REHMAN KARIM SALEH,

*Plaintiff-Appellant,*

—v.—

SULKA TRADING LTD., A. SULKA AND COMPANY LIMITED,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of New York (Preska, *J.*)
No. 1:18-cv-09299

Before: KATZMANN, *Chief Judge*, PARK, *Circuit Judge*, and CRAWFORD, *Chief District Judge.*[1]

Plaintiff-appellant Abdul Rehman Karim Saleh brought this action seeking a declaratory judgment adjudicating the validity of defendants' trademark

---

[1] Judge Geoffrey W. Crawford, of the United States District Court for the District of Vermont, sitting by designation.

registrations relating to the "SULKA" mark. The District Court for the Southern District of New York (Preska, *J.*) dismissed his complaint for lack of subject-matter jurisdiction, finding that no genuine case or controversy existed. On appeal, Saleh argues that the allegations in his pleadings adequately show that he could quickly transition his online business—which presently operates only in India and Thailand—to serve customers in the United States. We agree with the district court, however, that Saleh's allegations are too vague to support the exercise of federal jurisdiction. We therefore **AFFIRM** the judgment of the district court.

---

MILTON SPRINGUT (Tal S. Benschar, *on the brief*), Springut Law P.C., New York, NY, *for Plaintiff-Appellant*.

JOHN P. MARGIOTTA (David Donahue, Sean F. Harb, *on the brief*), Fross Zelnick Lehrman & Zissu, P.C., New York, NY, *for Defendants-Appellees*.

---

PER CURIAM:

In this case we are called upon to examine an action for declaratory relief in the context of trademarks.

Plaintiff-appellant Abdul Rehman Karim Saleh is the co-owner of an online business that sells apparel bearing the marks "SULKA" and "PHULKA" to customers in India and Thailand. He would like to sell his wares in the United States as well, but several U.S. trademark registrations relating to the "SULKA" mark are currently owned by defendants-appellees, Sulka Trading Ltd. and A. Sulka and Company Limited (collectively, "Sulka Trading"). After an

2

exchange of correspondence in which counsel for Sulka Trading insisted that the mark was still in active use, Saleh brought this action seeking a declaratory judgment that the trademark had been abandoned. The district court granted defendants' motion to dismiss for lack of subject-matter jurisdiction, finding that Saleh's allegations did not demonstrate that he was prepared to immediately bring his goods to market in the United States.

On appeal, Saleh argues that the allegations in his pleadings—which chiefly concern his business activities in India and Thailand—support an inference that he could quickly transition his online business to service customers in the United States. But under our precedent, to permit the exercise of jurisdiction over this declaratory judgment action, Saleh was required to allege that he "has engaged in a course of conduct evidencing a definite intent and apparent ability to commence use of the marks on the product." *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 595–96 (2d Cir. 1996), *abrogated on other grounds by MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).[2] Saleh's business activities in India and Thailand evince neither intent nor ability to sell his apparel in the

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, and citations.

3

United States. Furthermore, Saleh's purported plans to sell his goods in the U.S. remain too vague and conclusory to invoke federal jurisdiction. We therefore affirm the district court's judgment of dismissal.

## BACKGROUND

In early 2018, Saleh, a resident of Thailand and businessman with several years' experience working in Bangladesh, Singapore, and Malaysia, began to explore starting an online clothing company. Together with Harsh V. Rungta, a resident of India, Saleh "developed a business plan that would market apparel . . . under the marks SULKA and PHULKA." App'x 237.

In the United States, the name "Sulka" is associated with a now-defunct luxury menswear brand. *See, e.g.*, Terry Pristin, *Sulka, Haberdasher to Royalty, Is to Close Its Last Shop in U.S.*, N.Y. Times (Dec. 21, 2001), https://www.nytimes.com/2001/12/21/nyregion/sulka-haberdasher-to-royalty-is-to-close-its-last-shop-in-us.html. Sulka Trading owns registrations for several U.S. trademarks relating to the SULKA mark. On August 28, 2018, Saleh wrote to Sulka Trading's parent company, representing that Saleh "intend[ed] to enter the United States market with various clothing and accessory items and use the mark SULKA for th[o]se goods." App'x 34. The letter asserted that the SULKA mark "ha[d] not been used

4

in U.S. commerce . . . for many years, and appears to have been abandoned." *Id.* The letter asked that Sulka Trading "voluntarily cancel" the SULKA trademark registrations and "confirm that Sulka Trading has no objection to Mr. Saleh's use of the SULKA mark." *Id.* Sulka Trading responded that it "ha[d] been using the SULKA brand in connection with the sale of ties in the United States" and that it "ha[d] imminent plans to launch a new and broader line of clothing under the SULKA brand." App'x 36. Sulka Trading characterized the mark as "one of great value to the company" and refused to consent to Saleh's use of it. *Id.* Sulka Trading asked that Saleh "confirm that he will not use SULKA" and that he "abandon[] his pending U.S. and Thai applications to register SULKA." App'x 37.

On September 6, 2018, Saleh requested additional proof that SULKA-marked products had been sold in recent years, which Sulka Trading provided on September 14. Sulka Trading also "reiterate[d] [its] request" that Saleh "amicably resolve any potential conflict here by willingly withdrawing both his Thailand and US applications for SULKA" and "confirm that he agrees to drop any plans to use SULKA." App'x 71. In response, Saleh adhered to his view that Sulka Trading had abandoned the mark through non-use and notified Sulka

Trading of the filing of this lawsuit. He indicated that he was "actively preparing for a launch in the United States" and that his plans were "potentially jeopardized" by Sulka Trading's "insistence that it has superior rights," but that he was "amenable . . . to discussing an amicable resolution of the matter." App'x 84.

**PROCEDURAL HISTORY**

Saleh filed this lawsuit on October 11, 2018, seeking a declaratory judgment that Sulka Trading had lost any trademark rights in the SULKA mark. The complaint alleged (without elaboration) that Saleh had "concrete plans" to market articles of clothing with the SULKA mark, and that Saleh had applied to register the trademark in the United States. App'x 8. Sulka Trading moved to dismiss, arguing that Saleh's unspecified "plans" were too vague to create an actual controversy capable of supporting the exercise of subject-matter jurisdiction. The parties then stipulated that Saleh would be permitted to file an amended complaint in an attempt to address the purported jurisdictional deficiency.

Saleh's First Amended Complaint ("FAC") offered more detail about his plans, explaining that Saleh had partnered with Rungta and that the pair had:

6

- applied to register the SULKA mark in Thailand and India, as well as in the United States;

- created a website, sulka-phulka.com, that offered SULKA-branded apparel for sale to India and Thailand;

- registered several other related domain names;

- sold an unspecified number of t-shirts to "a customer in India";

- contracted with unnamed "manufacturers of apparel" to create clothing bearing the SULKA mark;

- contracted with unnamed "shipping services" to ship the goods to India and Thailand; and

- contracted with "on-line retail sales portals" to offer and sell the goods to customers in India and Thailand.

App'x 84–85. The FAC further alleged that Saleh "could expand" to the United States market by configuring the website to accept orders from the United States, "[a]rranging for payments through U.S. payment processors such as PayPal," and utilizing Saleh's current shipper to ship orders to the U.S. App'x 85. Sulka

Trading promptly renewed its motion to dismiss, arguing that the amendment had not cured the lack of a real controversy.[3]

The district court granted the motion to dismiss, concluding that Saleh's desire to use the mark in the United States was too hypothetical to create a genuine controversy. The court rejected Saleh's reliance on his business activities in Thailand and India, stating that "foreign activity alone does not tend to create jurisdiction in the United States." *Saleh v. Sulka Trading Ltd.*, No. 18-cv-9299 (LAP), 2019 WL 3711770, at *7 (S.D.N.Y. July 15, 2019). Finally, the district court noted that "almost all of [Saleh's] activity purportedly demonstrating his imminent ability to use the SULKA mark in the United States occurred after he filed the [initial] Complaint." *Id.* at *8. These activities, the court held, were irrelevant, for "post-complaint facts cannot create jurisdiction where none existed at the time of [the original] filing." *Id.*[4]

---

[3] Subsequent to the filing of Sulka Trading's renewed motion to dismiss, Saleh filed a Second Amended Complaint solely for the purpose of adding A. Sulka and Company as a defendant. The Second Amended Complaint is otherwise identical to the First Amended Complaint, and the parties agreed that Sulka Trading's motion to dismiss would be deemed to have been filed on behalf of both defendants.

[4] The district court also denied Saleh's request for jurisdictional discovery. Saleh does not challenge that ruling on appeal.

Saleh timely appealed.[5]

**DISCUSSION**

**I.      Standard of Review**

"On appeal from a dismissal for lack of subject matter jurisdiction, we review the district court's legal conclusions de novo and its factual findings for clear error." *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) (per curiam).[6] "A district court has discretion to hold a hearing to resolve factual disputes that bear on the court's jurisdiction, but where, as here, the case is at the pleading stage and no evidentiary hearings have been held, in reviewing the grant of a motion to dismiss under [Federal Rule of Civil

---

[5] While this appeal was pending, Saleh filed a new action relating to this dispute. *See* Complaint, *Saleh v. Sulka Trading Ltd.*, No. 19-cv-8488-LAP (Sept. 12, 2019), ECF No. 1. We express no opinion as to the sufficiency of that complaint.

[6] Sulka Trading argues that we review the district court's determination that it lacked jurisdiction for abuse of discretion. Not so. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995), and we review *that* decision for abuse of discretion. Here, however, the district court had no occasion to exercise its discretion because it concluded that it lacked subject-matter jurisdiction. *Saleh*, 2019 WL 3711770, at *8. We review that jurisdictional determination de novo. *See Garanti Finansal Kiralama A.S. v. Aqua Marine and Trading, Inc.*, 697 F.3d 59, 64 n.5 (2d Cir. 2012) (explaining this distinction).

Procedure 12(b)(1)] we must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008).

## II.      Subject-Matter Jurisdiction in Declaratory Judgment Cases

The Declaratory Judgment Act permits a district court, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). An action seeking declaratory relief satisfies the case-or-controversy requirement, and thus permits the exercise of federal jurisdiction, if the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests" and is "real and substantial," such that it "admit[s] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.*

Prior to *MedImmune*, this Circuit applied a two-pronged test to determine whether the case-or-controversy requirement was satisfied "[i]n a declaratory judgment action involving trademarks." *Starter Corp.*, 84 F.3d at 595. We asked, first, whether "the defendant's conduct created a real and reasonable apprehension of liability on the part of the plaintiff," and, second, whether "the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant." *Id. MedImmune* "rejected *Starter*'s reasonable apprehension requirement," although "the threat of future litigation remains relevant in determining whether an actual controversy exists." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95–96 (2d Cir. 2011). *Starter*'s second prong, however, remains valid. *Id.* at 96 n.1. This prong requires that the plaintiff adequately allege that he or she "has engaged in a course of conduct evidencing a definite intent and apparent ability to commence use of the marks on the product." *Starter*, 84 F.3d at 595–96.

### III.    The Adequacy of Saleh's Allegations

Applying these standards, we conclude that the complaint before us does not establish that a justiciable case or controversy exists.

11

As a preliminary matter, the parties dispute which allegations we may properly consider. Several of the allegations in the FAC relate to activities that appear to have taken place after the filing of the original complaint. The district court concluded that these allegations were not relevant to the question of jurisdiction because "post-complaint facts cannot create jurisdiction where none existed at the time of [the original] filing." *Saleh*, 2019 WL 3711770, at *8. Sulka Trading similarly argues on appeal that these allegations cannot be relied upon to establish jurisdiction because "the jurisdiction of the court depends upon the state of things at the time of the action brought." Appellees' Br. 19 (quoting *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004)). Saleh, in turn, points out that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." Appellant's Reply Br. 11 (quoting *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007)).

Although we have discussed the question in dicta, *see Travelers Ins. Co. v. 633 Third Assocs.*, 973 F.2d 82, 87–88 (2d Cir. 1992), we have never squarely addressed whether events occurring after the filing of a complaint may cure a jurisdictional defect that existed at the time of initial filing. That question has

12

divided our sister circuits.[7] We need not answer it here, however, because even

the expanded allegations in the FAC are insufficient to confer jurisdiction. We

therefore assume, solely for the purpose of deciding this appeal, that these

allegations are relevant to the existence of subject-matter jurisdiction.

As previously noted, to permit the exercise of federal jurisdiction over this

declaratory judgment action, Saleh was required to plead that he "has engaged in

a course of conduct evidencing a definite intent and apparent ability to

commence use of the marks on the product." *Starter*, 84 F.3d at 595–96. The

parties agree that, to satisfy this test, Saleh must allege that he is prepared to sell

products bearing the SULKA mark in the United States. Virtually all of the

conduct alleged in the FAC, however, relates to Saleh's business activities in

---

[7] *Compare Scahill v. District of Columbia*, 909 F.3d 1177, 1184 (D.C. Cir. 2018); *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 6 n.2 (1st Cir. 2015); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th Cir. 2015); *Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 347 (4th Cir. 2014); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008); *and Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 290 (8th Cir. 1988) (holding that post-complaint facts alleged in a supplemental pleading may cure jurisdictional defects), *with Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 593 (5th Cir. 2015); *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013); *and Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1383–84 (Fed. Cir. 2010); *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000) (holding that jurisdiction cannot be based on events subsequent to the filing of the original complaint).

India and Thailand. App'x 200–01. Saleh alleges that he "could" expand his

business to cover the United States, App'x 201, but does not allege that he has

taken any steps whatsoever to do so. It is not enough for Saleh to aver that he has

the intent and ability to enter the U.S. market; he must point to specific conduct

on his part that evidences such intent and ability. He has not done so.

To be sure, a party's business activities abroad might be relevant to a

determination that the party is ready and able to expand into the United States.

The district court's assertion that "foreign activity alone does not tend to create

jurisdiction in the United States," *Saleh*, 2019 WL 3711770, at *8, should not be

understood to mean that allegations of foreign activity are never enough to

confer jurisdiction. Our cases impose no such bright-line test for jurisdiction

under the Declaratory Judgment Act.

We eschew prescribing acts that must be alleged to satisfy the case or

controversy requirement and prefer to examine each case on its merits. Here,

Saleh's proposed plans are too nebulous and ephemeral to support the

conclusion that he has "engaged in a course of conduct evidencing a *definite*

intent and apparent ability," *Starter*, 84 F.3d at 596 (emphasis added), to sell his

products in the United States. Saleh alleges that he might use his existing

shipper, or he might contract with a different shipper; he might process payments through PayPal, or perhaps a different processor; he might contract with unnamed and unspecified "additional on-line portals" to sell his wares. App'x 201. These hypothetical possibilities, without tangible steps to effectuate those plans, are not enough to create a "definite and concrete" dispute between the parties. *MedImmune*, 549 U.S. at 127. Nor do the more detailed allegations in Saleh's declaration, submitted in opposition to the motion to dismiss, fix this fundamental problem. Although Saleh claims to have "conduct[ed] market research," "travel[ed] to meet potential suppliers," and "identif[ied] leather goods manufacturers," App'x 237–38, he does not specify whether those exploratory activities were directed at the United States or merely at India and Thailand.

The only allegation that *does* relate to the U.S. market is Saleh's "[a]pplication to register the SULKA mark in the United States." App'x 200. While this allegation is certainly relevant to the matter of Saleh's intent, it has little bearing on his ability to transition his business to the United States. And there were significant reasons for the district court to be skeptical that Saleh was, in fact, prepared to enter the U.S. market. For example, as of the date that the

15

First Amended Complaint was filed, Saleh was not in possession of any actual shirts bearing the SULKA mark. His website, which purported to offer such shirts for sale, simply digitally added the mark to images of the shirts. Only after Saleh filed his opposition to the motion to dismiss did he represent that he had finally received "samples" of the actual shirts from his supplier. App'x 239. That Saleh lacked any inventory for months after this lawsuit was filed undermines his assertion that he would be able to quickly transition his business to the United States. And the revelation that Saleh had not even received samples of the final product calls into question the allegation in the First Amended Complaint that he had *already* sold an unspecified number of "t-shirts bearing the SULKA label to a customer in India." App'x 84.

We are mindful, of course, that a declaratory judgment plaintiff need not "bet the farm, so to speak," by actually infringing the mark in question prior to filing suit. *MedImmune*, 549 U.S. at 129. But Saleh's conduct here falls short of the kind of preliminary activity that we and other courts have found sufficient to uphold declaratory judgment jurisdiction. For example, in *Starter*, we found an actual case or controversy existed where the plaintiff had not only "designed styles and prepared prototype shoes"—as Saleh appears to have done with his

16

shirts—but also "conducted a consumer survey; made strategic decisions regarding who should manufacture the shoes; hired an external licensing agent; and attempted to find a manufacturing partner." 84 F.3d at 596. Saleh, in contrast, does not allege, for example, that he has conducted any market research relating to the United States, nor has he made any concrete plans about how his products will find their way to customers here. Similarly, in *Gelmart Industries, Inc. v. Eveready Battery Co.*, 120 F. Supp. 3d 327 (S.D.N.Y. 2014), the district court found declaratory judgment jurisdiction appropriate where the plaintiff "ha[d] long-standing relationships with suppliers and manufacturers located in China, Indonesia, India, Bangladesh and the Philippines, with the ability to manufacture and supply product to the U.S. market-place within weeks" and "ha[d] pitched the product concept to major retailers and held multiple discussions, design and branding meetings based on retailer interest." *Id.* at 332. Saleh does not allege that his brand-new company has undertaken similar levels of marketing or sales outreach.

We emphasize that we do not mean to imply that any particular action or combination of actions is always necessary to find that a case or controversy exists. For example, because he intends to start an online store, Saleh may not

17

need to cultivate relationships with retail partners. Nor do we hold that *Starter* or any other case sets out the bare minimum that a plaintiff must do before a declaratory judgment action can be maintained, for each case must be judged on its own merits. *See MedImmune*, 549 U.S. at 127 ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."). We discuss these cases only to highlight the comparative paucity of Saleh's allegations. Before a court may entertain an action for declaratory relief in the context of trademarks, the plaintiff must allege that he has taken *some* action showing that he has both the "definite intent and apparent ability to commence use of the marks on the product." *Starter*, 84 F.3d at 596. The allegations in the FAC do not meet that burden.[8]

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[8] Because we resolve this appeal based on the second prong of the *Starter* test, we deny as moot Saleh's motion for judicial notice, ECF No. 56, which is relevant only to the separate requirement that the parties have adverse legal interests. We also deny as moot Sulka Trading's motion to strike, ECF No. 74.